UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | Docket No. 2:19-cr-00123-DBH |
| DAMON FAGAN | ) ) ) ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

Defendant Damon Fagan replies as follows to the government's response to his motion to suppress.

1. THERE WAS NO TRAFFIC VIOLATION JUSTIFYING THE INITIAL STOP.

Reasonable suspicion for a traffic stop can rest on a mistake of law if the mistake is "objectively reasonable." *United States v. Lawrence*, 675 Fed. Appx. 1, 3 (1st Cir. 2017) (citing *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 540 (2014)).  On the other hand, "if a mistake of law leads an officer to initiate a traffic stop but the mistake is objectively *un*-reasonable, any evidence stemming from the traffic stop should be suppressed." *Lawrence*, 675 Fed. Appx. at 3 (citing *Heien*, 135 S.Ct. at 536)) (emphasis added).  In making this determination, a court must decide only "whether, considering the totality of the circumstances, an officer could have reasonably suspected that" a traffic violation occurred. *Lawrence*, 675 Fed. Appx. at 3.  "[A]n officer's 'subjective understanding' is irrelevant." *Heien*, 135 S.Ct. at 541 (Kagan, J., concurring).

Despite the fact that Trooper Darcy followed Mr. Fagan for approximately five miles after Mr. Fagan slowed to pass through the York tool booth, the government is unable to point to a specific traffic violation committed by Mr. Fagan.  Thus, the government asks the Court to consider that "[a] trained and experienced Maine State Police Trooper personally observed the lane change and concluded that it was unsafe." Gvt. Response at 8.  But there are no objective facts to support the Trooper's subjective determination that the lane change was unsafe.  The cruiser video in this case shows Mr. Fagan driving prudently behind the tractor trailer, then safely moving into the passing lane, then safely moving back in front of the tractor trailer once safely ahead of it.  There is no evidence to suggest otherwise.

After conceding that "there is no per se requirement" to signal a lane change, Gvt. Response at 7, the government argues that Mr. Fagan's late use of his turn signal made the lane change unsafe, but there is nothing in the video to support this.  On the contrary, Mr. Fagan's pass of the tractor trailer looks very much like the thousands of passing maneuvers that happen every day on the Maine Turnpike.  The government also asserts that Mr. Fagan "cut off" the tractor trailer, *see id.*, but there is nothing in the video to suggest that Mr. Fagan was unreasonably close to the tractor trailer when he moved back in front of it.  In fact, a close view of the cruiser video shows that just before initiating the stop of Mr. Fagan, Trooper Darcy made the exact same maneuver as Mr. Fagan and, like Mr. Fagan with his turn signal, Trooper Darcy did not activate his emergency lights until he was already pulling in front of the tractor trailer.  Where there was no emergency

2

requiring Trooper Darcy to immediately stop Mr. Fagan, surely he would not have engaged in an unsafe maneuver himself to make the stop.

In sum, Mr. Fagan simply did not commit a traffic violation and, Mr. Fagan respectfully suggests that when the Court views the video for itself, the Court will agree that there was no objectively reasonable basis for the stop of Mr. Fagan.

2. MR. FAGAN WAS NOT FORMALLY ARRESTED, AND SO HIS SEARCH CANNOT BE JUSTIFIED AS A SEARCH INCIDENT TO ARREST.

In its response to Mr. Fagan's Motion to Suppress, the government notes that Mr. Fagan was told that he was "not being arrested, but was being detained." Gvt. Response at 2. The government also argues that Mr. Fagan could have been searched incident to arrest because the government had probable cause to arrest him. *Id*. at 10, n. 6. Where there is no arrest, however, there can be no search incident to arrest. *See United States v. Hawkins*, No. 00-CR-53-BS, 2001 WL 103542 at * 7 - 9 (D. Me Feb 6, 2001) (citing cases).

In *Hawkins*, this Court (Singal, J.) observed that "the proposition that a search incident to arrest relies on an actual arrest is supported by the [then] recent case of *Knowles v. Iowa*, 525 U.S. 113 (1998)." *Hawkins*, No. 00-CR-53-BS, 2001 WL 103542 at * 9. Rejecting a government argument like the one advanced in this case- that a search incident to arrest was allowed because the government had probable cause to arrest Mr. Fagan for driving with a suspended license- Judge Singal observed that a search incident to arrest of a suspect who has not been arrested "only applies when the *formal arrest* follow[s] quickly on the heels of the challenged search." *Hawkins*, No. 00-CR-53-BS,

3

2001 WL 103542 at * 9 (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)) (emphasis in original)).  In short, Mr. Fagan was never formally arrested and, therefore, he was not subject to a search incident to arrest.

3. MR. FAGAN DID NOT VOLUNTARILY WAIVE HIS RIGHT TO REMAIN SILENT.

When deciding the appropriateness of the renewed questioning of Mr. Fagan after he invoked his right to remain silent, the court must focus its inquiry on "whether the suspect's 'right to cut off questioning' was at all times 'scrupulously honored.'" *United States v. Oquendo-Rivas*, 750 F.3d 12, 17 (1st Cir. 2014) (quoting *Michigan v. Mosely*, 423 U.S. 96, 103 - 104 (1975)).  As the government points out, there are four factors relevant to this determination.  Gvt. Response at 11 (quoting *Oquendo-Rivas*, 750 F.3d at 17 – 18).  The government also suggests that "at least some of the factors weigh in favor of the permissibility of the resumed questioning."  Gvt. Response at 11.  "At least some" is not enough.  It is the "totality of the circumstances" that matters.  *Oquendo-Rivas*, 750 F.3d at 18 (citing cases).

Mr. Fagan's right to cut off questioning was not scrupulously honored.  First, only four minutes after Mr. Fagan invoked his right to remain silent at 12:12am, with no suggestion by Mr. Fagan that he had changed his mind about answering questions, Trooper Flanagan engaged Mr. Fagan in conversation about where Mr. Fagan lived and how far he had to travel while tired.  Video 10 at 51:40. The skepticism in Trooper Flanagan's voice is unmistakable, and it is clear that he is attempting to elicit incriminating responses rather than simply making conversation or asking administrative

4

questions. At approximately 12:18am, six minutes after Mr. Fagan invoked his rights, Trooper Darcy searched him again and said he believed Mr. Fagan was concealing something in his buttocks. Video 1 at 1:19:15; Video 10 at 53:18. Trooper Darcy then suggested to Mr. Fagan that if he was cooperative he would be able to leave, but if Mr. Fagan was not cooperative, then he would be taken to jail and X-rayed. Trooper Darcy continued pressing Mr. Fagan until Mr. Fagan said, "I'll get it" and began reaching into his pants, at which time the Troopers stopped him from doing so.

      Trooper Darcy and Sergeant Pappas then together continued to press Mr. Fagan, reiterating the possibility of his release if he turned over any drugs he had on his person. Gvt. Response at 4. Mr. Fagan was then *Mirandized* again at 12:28, after which, Mr. Fagan finally broke down and confessed to possessing heroin.[1] *Id* at 4 – 5. The First Circuit has noted that a case could arise in which "serious concerns may well arise when questioning resumes only twenty minutes after an initial invocation of the right to remain silent." *Oquendo-Rivas*, 750 F.3d at 18. This is just such a case as Mr. Fagan was subjected to repeated interrogation and a second *Miranda* warning all within 20 minutes of invoking his right to remain silent.

      Second, it was Trooper Flanagan who first questioned Mr. Fagan about his travel plans four minutes after Mr. Fagan invoked his rights to Trooper Flanagan. Trooper Flanagan was also present at the scene during Trooper Darcy's continued attempts to

---

[1] The government's response's indication in its response that Mr. Fagan possessed Fentanyl appears to be a typographical error. Mr. Fagan did not possess Fentanyl.

elicit incriminating statements from Mr. Fagan. Accordingly, Trooper Flanagan was involved in both interrogations. Finally, Mr. Fagan was always questioned about the same crime. Taken in their totality, these factors weigh heavily against the notion that Mr. Fagan's invocation of his right to remain silent was scrupulously honored.

4. BUT FOR THE UNLAWFUL QUESTIONING AND SEARCHING OF MR. FAGAN, THE TROOPERS WOULD NOT HAVE DISCOVERED HEROIN IN HIS POSSESSION.

Although the Troopers repeatedly suggested to Mr. Fagan that they would take him to jail if he did not cooperate to their satisfaction, they had probable cause to arrest Mr. Fagan for operating after suspension within moments of the initial stop, but they never arrested him. Rather, despite his protestations, the Troopers repeatedly searched and questioned Mr. Fagan on the side of the road for nearly two hours until he confessed and turned over the heroin in his possession. Even when Mr. Fagan admitted the felony conduct, he was not arrested. Accordingly, the inevitable discovery doctrine does not apply in this case.

## Conclusion

For the foregoing reasons, and as set forth more fully in his motion to suppress, Defendant Damon Fagan respectfully moves this Court to suppress all evidence obtained as a result of the unlawful stop, searching and questioning of Mr. Fagan.

DATED: January 9, 2020        */s/ Jonathan M. Goodman*
                              Jonathan M. Goodman
                              Attorney for Defendant Damon Fagan

Troubh Heisler, PA
511 Congress Street, Suite 700
P.O. Box 9711
Portland, Maine 04104-5011
Tel: (207) 780-6789
Fax: (207) 774-2339
e-mail: jgoodman@troubhheisler.com

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2020, I electronically filed Defendant's Motion to Suppress with Incorporated Memorandum of law with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to Nicholas Scott, Esq.

                                           */s/ Jonathan M. Goodman*
                                           Jonathan M. Goodman
                                           Attorney for Defendant Damon Fagan