# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>v. )<br>)<br>DAMON FAGAN, )<br>)<br>DEFENDANT )   | CRIMINAL NO. 2:19-CR-123-DBH |

## DECISION AND ORDER ON DEFENDANT'S RENEWED MOTION FOR EXPEDITED AND COMBINED PLEA AND SENTENCING HEARING VIA TELEPHONE OR VIDEOCONFERENCE

Federal Criminal Rule 43 requires that a defendant be present in person to plead guilty to a felony and be sentenced. Fed. R. Crim. P. 43(a) ("the defendant must be present"); United States v. Bethea, 888 F.3d 864, 866-67 (7th Cir. 2018) (the in-person requirement is not waivable). During the COVID-19 pandemic, however, Congress has authorized federal judges to take a felony guilty plea and sentence by video or teleconference if the defendant consents after consulting counsel, and if "the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice."[1] To date, judges in this District have used that emergency authority to take felony guilty pleas and

---

[1] Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, §§ 15002(b)(2)(A), (b)(4), 134 Stat. 281, 528-29 (2020).

sentence defendants by telephone or videoconference when the parties have recommended "time served" sentences.

This case presents the question whether I should use that authority when a defendant is confronting a much longer sentence but wants to appeal a pre-trial ruling on a motion to suppress because, if he is successful on the appeal, he probably could avoid a conviction and sentence altogether. I conclude that, at this stage—where his federal time in custody is only about to begin—his desire to appeal does not meet the CARES Act requirement for a "specific reason[ ] that the plea or sentencing in [this] case cannot be further delayed without serious harm to the interests of justice" to justify dispensing with the in-person hearing requirement.

## FACTS AND PROCEDURAL HISTORY

A grand jury indicted the defendant, Damon Fagan, for possessing heroin on January 6, 2019, with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (ECF No. 24). On February 6 and 11, 2020, before the COVID-19 pandemic struck, I conducted an evidentiary hearing on Fagan's motion to suppress evidence derived from a traffic stop. I denied the motion by bench ruling on February 11 (ECF No. 75). Fagan and the government then agreed to a conditional guilty plea under Rule 11(a)(2), preserving Fagan's ability to appeal my adverse suppression ruling if I should accept the plea. That plea hearing was originally scheduled for March 30 (ECF No. 81), but it was delayed by the COVID-19 pandemic's interruption of all in-person court proceedings in this District. At Fagan's written request, I approved the pre-plea preparation of a presentence

report under Rule 32(e) (ECF No. 93). According to the presentence report, Fagan has a high criminal history, Category V, and his Guideline range is 30-37 months, although Fagan tells me that it may be increased to 33-41 months based upon further criminal history information coming to the Probation Officer's attention that would elevate his Criminal History to Category VI. Def.'s Mot. at 3 n.1 (ECF No. 97). Until now, Fagan has been serving a state sentence and has waived his right to a federal detention hearing (ECF No. 21). But he is due to satisfy the state sentence any day now, PSR ¶ 30, and then he will be detained federally. He asks that I accept his conditional guilty plea and sentence him by videoconference as soon as possible so that he may quickly pursue his appeal of my suppression ruling. Def.'s Mot. at 3-4.[2] The government does not object. Gov't Resp. at 2 (ECF No. 98).[3]

## ANALYSIS

Unless the CARES Act emergency provision applies, the law is clear that a defendant's physical presence is required for a felony guilty plea and sentencing. Fed. R. Crim. P. 43(a) ("must be present").[4] The Seventh Circuit has held that a

---

[2] Fagan has been assiduous in seeking expedited treatment, filing his first motion for a guilty plea hearing without his physical presence even before the CARES Act permitted videoconferencing for felony guilty pleas that satisfy its criteria. Mot. for Expedited Hr'g (ECF No. 84) (filed March 25, 2020); CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (enacted March 27, 2020).

[3] The government denies that the delay in Fagan's ability to appeal the suppression ruling would result in serious harm to the interests of justice. Gov't Resp. at 1-2. Its lack of objection to a videoconference plea and sentence is based instead on the court's authority to impose a time served sentence, id. at 2, although the government opposes such a sentence.

[4] Although it is a Rule, under the Rules Enabling Act it has the force of law. See 28 U.S.C. § 2072; Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988) (Federal Rule of Criminal Procedure 52(a) (harmless error rule) is, "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); 1 Charles Alan Wright

defendant cannot waive this physical presence requirement for sentencing, even for serious health issues.  <u>Bethea</u>, 888 F.3d at 865, 867.  In doing so, the Seventh Circuit elaborated upon the importance of physical presence:

> Our decision is supported by the unique benefits of physical presence.  As the Sixth Circuit explained, "[b]eing physically present in the same room with another has certain intangible and difficult to articulate effects that are wholly absent when communicating by video conference."  Likewise, the Fourth Circuit reasoned that "virtual reality is rarely a substitute for actual presence and that, even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it."

> This Court has also recognized the value of the defendant and judge both being physically present  In the context of revocation of supervised release via videoconferencing, we noted that "[t]he judge's absence from the courtroom materially changes the character of the proceeding."  The same is true if the defendant is the person missing.  "The important point is that the form and substantive quality of the hearing is altered when a key participant is absent from the hearing room, even if he is participating by virtue of a cable or satellite link."  A "face-to-face meeting between the defendant and the judge permits the judge to experience 'those impressions gleaned through . . . any personal confrontation in which one attempts to assess the credibility or to evaluate the true moral fiber of another.'"  "Without this personal interaction between the judge and the defendant— which videoconferencing cannot fully replicate—the force of the other rights guaranteed" by Rule 43 is diminished.

<u>Id</u>. at 867 (citations omitted).  Other cases affirm the importance of a face-to-face meeting for these life-altering decisions, counting videoconferences an imperfect substitute.  <u>See, e.g.</u>, <u>United States v. Williams</u>, 641 F.3d 758, 764 (6th Cir. 2011) ("As our sister circuits have recognized, and anyone who has used video conferencing software is aware, 'virtual reality is rarely a substitute for actual

---

& Arthur R. Miller, <u>Federal Practice & Procedure</u> § 32 (4th ed. 2020) ("The Criminal Rules have the force and effect of law.").

presence.'").  From thirty years of federal sentencing, I can attest to the importance of seeing the defendant in the same room at sentencing.[5]  Physical presence makes unavoidable the recognition that—in sentencing—one human being sits in judgment of another, with a dramatic impact on the future of a living, breathing person, not just a face on a screen.[6]

But the highly contagious nature of COVID-19 has made it impossible to conduct the in-person hearings that Rule 43 requires, and this District has not yet resumed them.  Under the CARES Act, Congress has created an exception to the in-person appearance requirement but only if, first, the Judicial Conference finds an emergency and the Chief Judge of the District finds that in-person hearings would seriously jeopardize public health and safety.  CARES Act, Pub. L. No. 116-136, § 15002(b)(2)(A), 134 Stat. 281, 528-29 (2020).  Both those requirements are satisfied here.  See Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic, United States Courts (Mar. 31, 2020), https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio -access-during-covid-19-pandemic; D. Me. General Order 2020-4 at 2.  Congress demanded still more to justify waiving the in-person requirement: the defendant must consent after consulting with counsel.  That requirement too is satisfied here; Fagan's lawyer tells me he has consented.  Mot. at 6.  But Congress imposed still one more requirement: "the district judge *in a particular case* finds

---

[5] During the pandemic but before videoconferencing became technologically available in this District, I conducted one plea and sentencing (time served) by telephone conference.  I found the process unsatisfactory in a number of ways.
[6] In this case there are no victims, whose physical presence also makes a difference.

*for specific reasons* that the plea or sentencing *in that case* cannot be further delayed without *serious harm* to the interests of justice." CARES Act § 15002(b)(2)(A) (emphasis added). This is obviously a case-specific standard, not a broad-based permission to use video and telephone conferencing.

The "interests of justice" phrase is not unique to the CARES Act. See, e.g., 28 U.S.C. § 1863(b)(7) (authorizing district judges to keep confidential the names drawn from the jury wheel "in any case where the interests of justice so require"); 18 U.S.C. § 3006A(a)(2) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person."). Applying those other statutes where that phrase appears, the First Circuit has held that it requires an exacting, case-specific analysis. In re Globe Newspaper Co., 920 F.2d 88, 93 (1st Cir. 1990) (construing the § 1863(b)(7) "interests-of-justice standard as requiring that the trial court find specific and convincing reasons why, in the particular case, the juror identities are required to be withheld"); United States v. Mala, 7 F.3d 1058, 1064 (1st Cir. 1993) (only the "rare" case will satisfy the § 3006A(a)(2) "interests of justice" standard).

The judges of this District have found the CARES Act requirement for videoconference pleas and sentencings satisfied in particular cases where the government has requested a sentence only of time served, reasoning that extending imprisonment because the pandemic delays an in-person hearing would seriously harm the interests of justice in its deprivation of liberty.[7]

---

[7] Some other districts have done the same. See, e.g., United States v. Collazo, No. 2:19-00120, 2020 WL 1905293, at *2 (S.D.W. Va. Apr. 17, 2020).

I recognize that the current pandemic, coming after the Seventh Circuit's 2018 statement in Bethea, has compelled individuals and businesses to become increasingly accustomed to videoconferencing of various sorts to stay in touch with friends and family and to conduct business.  But I am not prepared to conclude that this increased familiarity eliminates the risk that the loss of physical presence will adversely affect the proceeding—for example, making it easier for a judge to impose a harsher sentence on a face on a computer monitor than on an individual in the judge's physical presence.  Colleagues in other districts have hesitated to find the CARES Act exception satisfied in other than time-served cases.  See, e.g., United States v. Ruiz, No. CR20-5002, 2020 U.S. Dist. LEXIS 89870, at *3 (W.D. Wash. May 21, 2020) (desire to be sentenced quickly so as to serve the sentence in the defendant's home state of California rather than continue to be detained in the state of Washington insufficient—"The CARES Act presents a limited exception to what is ordinarily a mandatory requirement that a plea hearing be conducted in person.  Courts have been sparing in applying this exception.  Courts have granted remote hearings where the delay required for an in-person hearing would result in a defendant's detention beyond the range of applicable sentencing guidelines."); United States v. Short, No. 3:15-cr-0174, 2020 WL 1969395, at *2 (D. Conn. Apr. 24, 2020) (40 criminal defendants awaiting in-person sentencing "as there are no compelling reasons to conduct them over videoconference"); United States v. Harry, No. 19-cr-535, 2020 WL 1528000, at *2 (E.D.N.Y. Mar. 31, 2020) (denying request for a remote hearing where Guideline range was 24 to 30 months); United

States v. Emory, No. 19-00109, 2020 WL 1856454, at *2 (D. Haw. Apr. 13, 2020) (denying request for telephonic hearing where Guideline range was 12 to 18 months); United States v. Jones, No. 19-225, 2020 WL 1644257, at *1 (D. Minn. Apr. 2, 2020) (denying request for remote sentencing; "[i]n light of his Guidelines range, the Court will schedule his sentencing as soon as practicable").[8]

Until now, the postponement of Fagan's conditional plea and sentence has posed no risk of serious harm to the interests of justice in his case because he could not be released while serving his state sentence. But that state sentence is about to expire, and therefore any further imprisonment must be justified on the basis of the federal charge to which he wants to plead guilty. If I accept his conditional guilty plea, the Guideline range (30 to 37 or 33 to 41 months) means he has a substantial amount of prison time ahead of him.[9] Thus, the postponement of plea and sentence still does not on its own threaten serious harm to the interests of justice. But Fagan suggests a successful appeal of my

---

[8] United States v. Cohen, No. 19CR741, 2020 WL 2539115, at *2 (S.D.N.Y. May 19, 2020), arguably supports a broader reading. There, the court concluded that delaying the defendant's sentencing until it could be done in person would do "serious harm to the interests of justice" because: (1) the defendant was on home confinement awaiting sentencing, and would probably not earn credit for that time; (2) the defendant was not a citizen, so his immigration status and employment were "in limbo" while he waited; and (3) "[d]elaying every sentencing would multiply the existing backlog of cases in the federal court system and generate a deluge of hearings once in-person proceedings can safely resume." Likewise, in United States v. Dones, No. 19CR169, 2020 U.S. Dist. LEXIS 91889, at *5-6 (S.D.N.Y. May 26, 2020), the judge found the CARES Act satisfied where the defendant sought a time-served sentence (the government sought more time), the lack of resolution of the federal case was preventing progress of a related state prosecution, and the government agreed that despite its opposition to time served, there were mitigating factors.

[9] Fagan says he will seek a variant sentence below the Guideline range. Mot. at 5. The government says it will seek a guideline sentence. Gov't Resp. at 2 (ECF No. 98). I will not resolve that disagreement until the plea hearing.

suppression ruling would set him free.[10]  If he wins the appeal and the government cannot preserve his conviction (I assume that without the evidence Fagan wants suppressed, the government would not have a winning case), then any detention after his state sentence expires could be called unjust.[11]  Is that a "specific reason" that, in the case of Fagan, threatens serious harm to the interests of justice unless I use videoconferencing to take his plea and sentence him remotely now, so that he can immediately appeal?

Weighing the prospect of a successful appeal against the justification for detention is not a creature of the pandemic.  Defendants convicted after trial or who enter conditional guilty pleas often think or hope they have winning issues on appeal that will erase their trial court convictions.  The Bail Reform Act of 1984 dealt with such cases.  It allows for release pending appeal only if the district judge finds that the appeal "raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1)(B).  Fagan does not satisfy any those conditions.[12]  In a case like Fagan's involving drug trafficking,

---

[10] His motion does not say that in so many words, but that is the obvious impetus for the conditional guilty plea.

[11] On the other hand, Fagan apparently will admit factual guilt in his conditional plea (this U.S. Attorney's Office customarily does not accept <u>Alford</u> pleas).  Thus, his challenge is based solely upon the exclusionary rule, not innocence.  Weighing serious harm to the interests of justice in this case involves application of the exclusionary rule, not a claim of innocence.

[12] Although every district court decision is subject to reversal on appeal, my ruling on the motion to suppress was fact-bound and unlikely to be reversed by an appellate court.  I can only surmise that Fagan hopes the existence of a dashcam video of the pursuit and stop will persuade the appellate court that the trooper's testimony is not reliable.  I found the trooper's testimony to be

"exceptional reasons" must also be shown.   18 U.S.C. §§ 3143(b)(2), 3145(c).[13] Those requirements are pertinent in informing my assessment whether Fagan's continued detention while awaiting an in-person hearing threatens "serious harm to the interests of justice."[14]

In fact, if this case qualifies for dispensing with the in-person hearing requirement, then every conditional plea and every conviction after trial should qualify.  That outcome is too broad for the CARES Act language, where Congress required that the judge "in a particular case finds for specific reasons" that the "interests of justice" will be "serious[ly] harm[ed]."  I do not find that this is "a particular case" where there are "specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice."[15]

---

credible and found the dashcam recording to be supportive of the trooper or at worst ambiguous. But I am aware of <u>Scott v. Harris</u>, 550 U.S. 372 (2007), where the Supreme Court used its own viewing of a video to overrule a trial judge's and court of appeals' interpretation.

[13] Fagan has not yet claimed he would be entitled to release pending appeal under section 3143(b).  He does say that after final judgment he will seek bail on appeal based in part upon the risks of the COVID-19 virus at the county jail where he is confined.  Mot. at 5-6.

[14] Fagan says that "it is possible that Mr. Fagan could serve his entire sentence without the ability to appeal the denial of his motion to suppress." Mot. at 4.  But it is too soon to say that the pandemic will delay things beyond the expiration of his likely sentence or that it will impair his ability to present his appeal.  <u>See United States v. DeLeon</u>, 444 F.3d 41, 57 (1st Cir. 2006) (discussing effect of delayed transcript on defendant's ability to present his appeal).

[15] Fagan's current optimism about the merits of his appeal understandably prompts his desire to move forward quickly.  But if I take his guilty plea and sentence him by videoconference, and if he loses his appeal (as seems likely), he will then focus on the sentence he received and may have remorse over his decision to waive an in-person hearing, concluding that he might have done better had he waited.  That could prompt a later collateral motion to attack the validity of his earlier consent and the effectiveness of his lawyer, laying greater weight at that point on the stringency of the CARES Act requirements that now he says he meets.

CONCLUSION

Accordingly, the defendant's Renewed Motion for Expedited and Combined Plea and Sentencing Hearing Via Telephone or Video Conferencing is **DENIED**. The plea and sentencing will be scheduled as soon as in-person hearings resume. In light of the ever-evolving nature of the pandemic and responses to it, however, the denial of the motion is without prejudice should the delay of in-person hearings be substantially extended such that this becomes "a particular case" where there are "specific reasons" that further delay would cause "serious harm to the interests of justice."[16]

**SO ORDERED.**

**DATED THIS 2ND DAY OF JUNE, 2020**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[16] Fagan concedes that a hearing in June or July "would not likely provide cause for the Court to grant his motion." Mot. at 4. There will be no in-person hearings in June; July has not yet been decided but resuming in-person hearings then seems unlikely. I cannot predict what will happen thereafter. I point out that I ruled promptly from the bench in February on the motion to dismiss. Had I taken the matter under advisement, requested new briefs and/or a transcript, and issued a written opinion—as judges sometimes do—then the suppression ruling, Fagan's request for a conditional plea, subsequent preparation of a presentence report, and scheduling of a sentencing hearing could easily have run into August or September.