# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

_____

|  |  |  |
|---|---|---|
|  | ) |  |
| UNITED STATES OF AMERICA | ) |  |
|  | ) |  |
| v. | ) | Crim. No. 2:19-CR-00123-DBH |
|  | ) |  |
| DAMON FAGAN, | ) |  |
| Defendant | ) |  |
| _____ | ) |  |

## MOTION TO REOPEN SUPPRESSION HEARING
### (HEARING REQUESTED)

NOW COMES the Defendant, Damon Fagan, by and through his attorney, David J. Bobrow, Esq., and respectfully requests that this Honorable Court reopen the suppression hearing and denial of the Motion to Suppress stating as case the following:

## ISSUE(S) PRESENTED:

This Motion seeks, with supportive authority, to reopen the denial of a Motion to Suppress. The underlying core issue before this Court is whether new information regarding Trooper Darcy that creates a presumption of improper motives or bias towards Daman Fagan would change its oral Order dated February 11, 2020 under Fourth Amendment or Equal Protection Clause analysis.

## LEGAL STANDARD:

" A ruling on whether to reopen a suppression hearing is governed by principles of jurisprudence that relate to reopening proceedings, generally." *United States v. Carter*, 374 F.3d 399, 405 (6th Cir.2004), vacated on other grounds sub nom. *Carter v. United States*, 543 U.S. 1111, 125 S. Ct. 1056, 160 L.Ed.2d 1045 (2005).

The Federal Rules of Criminal Procedure do not expressly recognize a motion to reconsider." *United States v. Christy*, 810 F.Supp.2d 1219, 1249 (D.N.M.2011) (Browning, J.); accord *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir.2010) ("None of the Rules of Criminal Procedure authorizes a generic motion to reconsider; the criminal rules lack a counterpart to the motions authorized by Fed.R.Civ.P. 50(b), 52(b), or 59, though they do authorize some post-trial motions ... that have features in common with motions under the civil rules." ). In the criminal context, however, courts ordinarily apply the same standards as those used in civil cases when addressing motions to reconsider. See *Id.* citing *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964); *United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976); *United States v. Ibarra*, 502 U.S. 1, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991)) (stating that the Supreme Court of the United States has " concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits" ); *United States v. Wilson*, No. 08-cr-263-KHV, 2011 WL 1706890, at *1 (D.Colo. May 5, 2011) (stating

that, in the context of criminal cases, courts ordinarily apply the same standard for a motion to reconsider as the standard they use in civil cases).

The United States Court of Appeals for the First Circuit has held that "motions for reconsideration [motions to reopen] are appropriate . . . if the moving party presents newly discovered evidence," *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). "A court will deny a motion for reconsideration based on the new evidence exception if that evidence in the exercise of due diligence could have been presented earlier." *Id.* (quoting *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir.2005) (internal quotation marks and citation omitted)).

## STATEMENT OF UNCONTESTED FACTS:

1. This matter is before the Court on the Government's Single Count Indictment for Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §841(a)(1). *ECF #24*.

2. On or about January 6, 2019, Trooper John Darcy stopped the Defendant Damon Fagan, an African-American male, who was traveling northbound on the Maine State Turnpike. *Transcript of Motion to Suppress, pg. 9-10*

3

3. The basis for the stop of the vehicle was a lane change that allegedly 'cut off' another vehicle. *Id. at 12-13.*[1]

4. The statute allegedly violated is entirely subjective. *29-A M.R.S.A. §2070* (using verbiage 'until safely clear.')

5. The alleged infraction does not clearly appear on video. *Suppression Videos, generally.*

6. Mr. Fagan filed a Motion to Suppress alleging there was no lawful basis for the stop of his vehicle. *ECF #46, pg. 4.*

7. The Court conducted a hearing on February 6, 2020. *ECF #66.*

8. In an oral Order dated February 11, 2020, the Court denied the Motion to Suppress. *ECF #75.*

9. In late August of 2020, the attorney for the government, Nicholas Scott, Esq. contacted Attorney Goodman, then counsel for the Defendant, and explained, in substance, that a video recording in an unrelated matter before this Court, *United States v. Walker*, Case No. 2:19-cr-00220-JDL, may be relevant to Mr. Fagan's arguments that the initial stop of him in this case was unlawful. *ECF #106.*

10. On September 2, 2020, the government made the video recording available to Attorney Goodman. *Id.*

---

[1] The Trooper also testified that the Defendant failed to use his turn signal but later acknowledged that this was not a traffic infraction. *Id.* at 55-56.

11. Mr. Fagan could not have obtained this evidence through the exercise of due diligence. *Id*.

12. That stop involved an African-American male named Terrel Walker. <u>See</u> *United States v. Walker, CMECF 2:19-cr-00220*.

13. In that matter, Mr. Walker was driving Northbound on Interstate 95. *Id. at ECF#55, 56, 58*.

14. After observing Mr. Walker, Trooper Darcy engaged in the following recorded exchange with another officer in the police vehicle:

John Darcy: "Like, if I see a white thug, I'm going to be interested, just like a black thug or a fucking Chinese thug. Like, I'm interested in thugs. That's not racial profiling. Like, some black guy goes by, and he's just like a normal dude from Portland, I don't give a fuck. You know what I mean, like whatever. This guy kinda looks like a thug to be honest with you."

Patrick Pescitelli: "The guy… you see the guy driving?"

John Darcy: "Yeah, he's wearing a wifebeater, he's got dreads.  He looks like a thug.  He may not be . . . and I'm not profiling him racially because I don't care that he's white or black. White kid, neck tats all over him, fucking sideways hat, thug. You know what I mean? So like . . . I get . . . I hate when people try to make it seem like that's what it is.  I care about where people are from, and the way they seem . . . you know what I mean?  Do they seem like they can be involved in drug dealing or gangs or something.  I don't give a fuck if someone's black or white.  Like . . . and I like saying this, like Nicole has a niece who is half-black.  I'll tell someone, 'Dude, my fucking niece is half-black.'  Like, don't play that racial shit with me."

*Id.*

15. Trooper Darcy's stated purpose of the stop was Mr. Walker's travel in the center lane of the three-lane Northbound section of I-95. *Id.*

16. Trooper Darcy claimed to have stopped Mr. Walker in violation of 29-A M.R.S. § 2052, which restricts drivers on divided highways to "ordinary operation to the right-hand lane and may use adjacent lanes for overtaking and passing another vehicle, but must return to the right-hand lane at the earliest opportunity." 29-A M.R.S.A. § 2052(6). *Id.*[2] That language, similar to 29-A M.R.S.A. §2070, is also subjective (using verbiage 'earliest opportunity.')

17. Mr. Fagan is seeking to reopen his suppression hearing based on the new information that could not be presented at the initial suppression hearing and hereby supplements the prior pleading filed by Attorney Goodman, *ECF #115*.[3]

18. Additionally, undersigned counsel is aware of another matter where Trooper Darcy followed a vehicle where the passenger was an African-American male that was allegedly operating erratically but with no specific violation, from the York Toll Plaza until it was stopped in Portland. See *United States v. Martin, CMECF 2:18-cr-00124*.

19. That alleged infraction also was not captured on video. *Id.*

20. These cases are clearly not in isolation.

*https://www.pressherald.com/2020/10/08/criminal-case-dropped-as-state-trooper-faces-racial-profiling-allegations/.*

---

[2] It is noteworthy that the Government dismissed the case against Mr. Walker. *Walker ECF #66*. It is further noteworthy that the stop in that matter was based on the allegation that the vehicle did not immediately return to the travel lane while this matter, it is based on the allegation that the vehicle did too quickly.

[3] The pleading was characterized as a Motion to Reconsider.

21. Trooper Darcy has previously been accused of racial profiling before this
Court. See *United States v. Anthony Jones*, *Case 2:19-cr-201, ECF #47, Order
on Motion for Discovery*.

ARGUMENT:

I.      EVIDENCE THAT COULD NOT BE OBTAINED PRIOR TO THE
        SUPPRESSION HEARING UNDERMINES THE TESTIMONY OF THE
        POLICE OFFICER[4]

This very Court has previously held that "there is no reason now to reopen the
record so as to allow generalized testimony about racial profiling and disparate treatment.
Lawyers will always have second thoughts and more ideas, but matters must come to an
end." *United States v. Artis*, Crim. 2:17-cr-102-DBH.

In this matter, evidence that could not be obtained prior to the suppression hearing
provides *specific* information related to racial profiling and disparate treatment by the

---

[4] The specific information that absolutely could not be obtained prior to the suppression hearing is all evidence
related to the United States v. Walker matter. The Government may argue that the other information referenced,
which includes impeachment evidence, could have been obtained. This would be asking the Government to be
relieved of discovery obligations that existed once they became aware of the Walker evidence. *United States v.
Burton*, 81 F.Supp. 3d at 1254 (directing the United States to "take a second look" at certain reports "to determine
whether they contain any material that must be disclosed"). Courts "are almost unanimous in holding that in
response to a specific motion . . . the prosecution is required to review the identified personnel file for Brady
material." *Snowden v. State*, 672 A.2d 1017, 1023 (Del. 1996)(Holland, J.). See *Milke v. Ryan*, 711 F.3d 998, 1006
(9th Cir. 2013); *United States v. Quinn*, 123 F.3d 1415, 1421 (11th Cir. 1997)(requiring the government to search
personnel records for Brady or Giglio material). Similarly, the current United States Attorneys' Manual also requires
prosecutors "to seek all exculpatory and impeachment information from . . . federal, state, and local law enforcement
officers and other government officials participating in the investigation and prosecution of the criminal case against
the defendant." *United States Attorneys' Manual §9-5-001(B)(2)(2014)*.

7

Government's only witness. *Statement of Uncontested Facts (hereafter 'Facts') at 9-21.* This evidence creates a genuine issue of fact based on the bias of the officer which correlates directly to whether there was actual probable cause to initiate the stop of Mr. Fagan. While the district court has wide discretion in determining when to reopen an evidentiary hearing, it abuses its discretion where the new evidence creates a genuine factual dispute on an outcome determinative fact." *United States v. Mercadel*, 75 Fed.Appx. 983, 2003 WL 21766541, at *6 (5th Cir.2003) (unpublished table decision).

Courts have recognized that evidence would create a genuine factual dispute on an outcome determinative fact if it "significantly bolsters" a key witness' credibility "*or goes to whether [the officer] in fact had probable cause,*" among other matters. *United States v. Mercadel*, 2003 WL 21766541, at *6 (emphasis added); *United States v. Atkins*, 1 F.3d 1247, 1993 WL 290157, at *2 (9th Cir.1993) (unpublished table decision) ("Because the new evidence in this case went to the heart of the magistrate judge's credibility determination underlying the denial of Atkins's suppression motion, the district court should have reopened to consider Weiss's credibility in light of the newly-discovered evidence'); <u>see</u> also *United States v. Henderson*, 463 F.3d 27 *; 2006 U.S. App. LEXIS 22852 (1st Cir. 2020).

In this matter, the basis for the stop of Mr. Fagan's vehicle was completely subjective. <u>See</u> *29-A M.R.S.A. §2070* (using verbiage 'until safely clear.') The officer initiating the stop is on video stating that he will engage in profiling based on his subjective determination of those he views as 'thugs.' *Facts at 14.* "The ordinary person,

8

looking at these facts, would, I believe, readily say: The officer(s) wanted to search {Fagan}… {and}found a way … ." *United States v. Weaver*, 18-1697 (2ⁿᵈ Cir. 2020)(Guido Calabresi, J. concurring). And that is clearly the appropriate conclusion here; Trooper Darcy, who has stated that he stops people who he perceives to be thugs found a way to stop Mr. Fagan based on a purely subjective statute, exactly as he did with Mr. Walker.[5] While the conclusion that Trooper Darcy simply 'found a way' would be appropriate prior to the existence of the Walker audio, it is an unavoidable conclusion with it. It is new evidence in the form of an essential material fact existing after this Court's decision. The Court will grant a motion for reconsideration where "[t]here are new material facts that happened after the Court's decision." *United States v. Bernal*, CR-12-01627-PHX-DGC <u>citing</u> *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.,* 215 F.R.D. 581, 586 (D. Ariz. 2003) (emphasis in original).


## II.   THE EVIDENCE THAT COULD NOT BE PRESENTED WOULD SHOW AN EQUAL PROTECTION VIOLATION

Even if the Court finds that the stop of Mr. Fagan was proper, there is ample evidence, that could not be presented at the suppression hearing (starting with Trooper Darcy's own verbiage) that he engages in selective enforcement. "[T]he Equal Protection Clause of the Fourteenth Amendment provides citizens a degree of protection

---

[5] As well as Mr. Martin and Mr. Jones. *Facts at 18-21.*

independent of the Fourth Amendment protection against unreasonable searches and seizures." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003)(quoting *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997)). "We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

A racially selective law enforcement claim exists where the government conduct had a discriminatory effect and where a discriminatory purpose motivated the conduct. See *Columbia Lea Reg'l Hosp.*, 345 F.3d at 1168 ("The requirements for a claim of racially selective law enforcement draw on what the Supreme Court has called 'ordinary equal protection standards.' The plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose.")(quoting *United States v. Armstrong,* 517 U.S. at 465). "The discriminatory purpose need not be the only purpose, but it must have been a motivating factor in the decision." *Columbia Lea Reg'l Hosp.,* 345 F.3d at 1168 (citing *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996)).

10

The stop in this matter was undoubtedly with a discriminatory purpose because Trooper Darcy stops African-American males who he views subjectively as 'thugs.' *Facts at 14*. Even without the requested additional discovery (see Motion for Discovery filed contemporaneously), there is ample evidence of Trooper Darcy actively engaging in discriminatory stops. *Facts at 2-21*. This is, unfortunately, not an uncommon theme. Pierson, Simou, Overgoor, Corbett-Davis, Jenson, Shoemaker, Ramachandran, Barghouty, Phillips, Shroff, & Goel, A Large-Scale 13 Analysis of Racial Disparities in Police Stops Across the United States, 4 Nature Human Behavior 736, 736, 737 (2020) (analysis of approximately 95 million stops nationwide found that [r]elative to their share of the residential population, . . . [B]lack drivers were, on average, stopped more often than white drivers); LaFave, *The Routine Traffic Stop" from Start to Finish: Too Much Routine*, *Not Enough Fourth Amendment*, 102 Mich. L. Rev. 1843, 1853 (2004); *Whitehead v. State*, 116 Md. App. 497, 507 n.4 (1997) ("studies conducted on a stretch of Interstate 95 between Baltimore and Delaware revealed that 93% of all drivers committed some type of traffic violation"); see also Carbado, *From Stopping Black People to Killing Black People: The Fourth Amendment Pathways to Police Violence*, 105 Cal. L. Rev. 125, 151 (2017) (Carbado) (describing "the ways in which traffic stops function as gateways to more intrusive searches and seizures.") The difference is that reasonable minds can believe the actions of officers like Trooper Darcy are with discriminatory intent, but here, Trooper Darcy boosts about his ability as an officer to do exactly what is generally believed; stop black males because he does not like the way they look. That is

the clear definition of an equal protection violation. *United States v. Avery*, 137 F.3d 343, 355 (6th Cir. 1997)("If law enforcement adopts a policy, employs a practice, or in a given situation takes steps to initiate an investigation of a citizen based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred.")

WHEREFORE, Defendant Damon Fagan respectfully moves this Court to reopen and subsequently, reconsider this Court's denial of his motion to suppress all evidence obtained as a result of the unlawful and discriminatory stop of Damon Fagan.

Dated this 19th day of October 2020 at Portland, Maine.

Respectfully submitted,

David J. Bobrow, Esq.
Attorney for Damon Fagan
BEDARD AND BOBROW, PC
9 Bradstreet Lane
P.O. Box 366
Eliot, ME 03903
207.439.4502
djblaw@bedardbobrow.com

12

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

_____

UNITED STATES OF AMERICA )

v. )                    Crim. No. 2:19-CR-00123-DBH

DAMON FAGAN, )
                    Defendant )
_____ )

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Bobrow, Esq., hereby certify that I have caused to be served via ECF Defendant Damon Fagan's Motion to Reopen to:

1.    Nicholas Scott, Esq. at <Nicholas.Scott@usdoj.gov>;
2.    All other persons of record in this matter.

Dated this 19th day of October 2020 at Portland, Maine.

Respectfully submitted,

David J. Bobrow, Esq.
Attorney for Damon Fagan
BEDARD AND BOBROW, PC
9 Bradstreet Lane
P.O. Box 366
Eliot, ME 03903
207.439.4502
djblaw@bedardbobrow.com

13