# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 2:19-CR-00123-DBH |
| DAMON FAGAN,<br>    Defendant | ) ) ) ) | |

## MR. FAGAN'S MOTION FOR DISCOVERY
### (HEARING REQUESTED)

NOW COMES the Defendant Damon Fagan, by and through his attorney, David J. Bobrow, Esq., and seeks formal discovery from this Honorable Court as follows:

## FACTUAL SUMMARY

This matter is before the Court on the Government's Single Count Indictment for Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §841(a)(1). *ECF #24*. On or about January 6, 2019, Trooper John Darcy stopped the Defendant Damon Fagan, an African-American male, who was traveling northbound on the Maine State Turnpike. *Transcript of Motion to Suppress, pg. 9-10.* The basis for the stop of the

1

vehicle was a lane change that 'cut off' another vehicle. *Id. at 12-13.*[1] The infraction does not clearly appear on video. *Suppression Videos, generally.* Mr. Fagan filed a Motion to Suppress arguing there was no lawful basis for the stop of his vehicle. *ECF #46, pg. 4*. The Court conducted a hearing on February 6, 2020. *ECF #66.* On February 11, 2020, the Court issued an oral order denying the Motion to Suppress. *ECF #75.* Subsequently, the Government provided information to counsel for Mr. Fagan regarding a stop initiated by Trooper Darcy that occurred on or about August 15, 2019. That stop, eerily similar to the one of Mr. Fagan also involved an African-American male named Terrel Walker. See *United States v. Walker, CMECF 2:19-cr-00220.* In that matter, Mr. Walker was driving Northbound on Interstate 95. *Id. at ecf #55, 56, 58*. After observing Mr. Walker, Trooper Darcy engaged in the following recorded exchange with another officer in the police vehicle:

> John Darcy: "Like, if I see a white thug, I'm going to be interested, just like a black thug or a fucking Chinese thug. Like, I'm interested in thugs. That's not racial profiling. Like, some black guy goes by, and he's just like a normal dude from Portland, I don't give a fuck. You know what I mean, like whatever. This guy kinda looks like a thug to be honest with you."
>
> Patrick Pescitelli: "The guy… you see the guy driving?"
>
> John Darcy: "Yeah, he's wearing a wifebeater, he's got dreads.  He looks like a thug.  He may not be . . . and I'm not profiling him racially because I don't care that he's white or  black. White kid, neck tats all over him, fucking sideways hat, thug. You know what I mean?  So like . . . I get . . . I hate when people try to make it seem like that's what it is.  I care about where people are from, and the way they seem . . . you know what I mean?  Do they seem like they can be involved in drug dealing or gangs or something.  I don't give a fuck if someone's black or white.  Like . . .

---

[1] The Trooper also testified that the Defendant failed to use his turn signal but later acknowledged that this was not a traffic infraction. *Id. at 55-56.*

and I like saying this, like Nicole has a niece who is half-black.  I'll tell someone, 'Dude, my fucking niece is half-black.'  Like, don't play that racial shit with me."

*Id.*

In that matter, Trooper Darcy's purpose of the stop was Mr. Walker's travel in the center lane of the three-lane Northbound section of I-95. *Id.* Trooper Darcy claimed to have stopped Mr. Walker for violation of 29-A M.R.S. § 2052, which restricts drivers on divided highways to "ordinary operation to the right-hand lane and may use adjacent lanes for overtaking and passing another vehicle, but must return to the right-hand lane at the earliest opportunity. 29-A M.R.S.A. § 2052(6). *Id.*[1] Mr. Fagan has sought to reopen his suppression hearing based on the new information that could not be presented at the initial suppression hearing. *ECF #115*.[2] Undersigned counsel has sought an extension of time to supplement that Motion. *ECF #117*. Additionally, undersigned counsel is aware of another matter where Trooper Darcy followed a vehicle in which the passenger was an African-American male that was alleged to be engaged in operating slowly from the York Toll Plaza until it was stopped in Portland. See *United States v. Martin, CMECF 2:18-cr-00124*. That alleged infraction also was not captured on video. *Id*. These cases are clearly not in isolation. *https://www.pressherald.com/2020/10/08/criminal-case-dropped-as-state-trooper-faces-racial-profiling-allegations/.* Additionally, Trooper Darcy has previously been accused of

---

[1] It is noteworthy that the Government dismissed the case against Mr. Walker. *Walker ECF #66.*
[2] The pleading was characterized as a Motion to Reconsider and has been supplemented and filed contemporaneously with this Motion.

racial profiling before this Court. See *United States v. Anthony Jones*, Case 2:19-cr-201, ECF #47, *Order on Motion for Discovery*.

## ADDITIONAL DISCOVERY REQUESTS

Mr. Fagan requests the following materials be provided by the Government pursuant to its obligations and responsibilities under *Brady v. Maryland* and its progeny. 373 U.S. 83 (1963). In the event that the government asserts, as it is likely to do, that such materials are not within the scope of *Brady,* Mr. Fagan respectfully requests that this Court order such materials produced to the Court for *in camera* review pursuant to *Brady*.

Mr. Fagan requests the following materials:

1. All communications between Trooper Darcy and dispatch from 9:00 P.M. January 6, 2019 until Midnight on January 6, 2019.

2. A list of all electronic requests from Trooper Darcy related to information on vehicles operating on the interstate from 9:00 P.M. until Midnight on January 6, 2019.

3. All police reports, video and audio recordings for any vehicle stops on the Maine Turnpike conducted by Trooper John Darcy in the last three years. For each report or incident please include:
    a. The purported justification for the stop;
    b. The race of the driver and any or all passengers in the vehicle;
    c. Names of drivers and vehicle occupants;
    d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them;
    e. All records related to the frequency with which Trooper Darcy actually discovers contraband in stopped vehicles.

4. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors alleging that he conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of

4

    his law enforcement career, and any disciplinary actions taken against him on these bases.

5. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

6. All police reports, video and audio recordings for any vehicle stops on the Maine Turnpike conducted by all troopers of Troop G of the Maine State Police in the last three years. For each report or incident please include:
   a. The purported justification for the stop;
   b. The race of the driver and any or all passengers in the vehicle;
   c. Names of drivers and vehicle occupants;
   d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them;
   e. All records related to the frequency with which troopers actually discover contraband in stopped vehicles.

7. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or their peers and colleagues or prosecutors alleging that they conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of their law enforcement career, and any disciplinary actions taken against troopers on these bases.

8. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

9. The names of all other persons present in a vehicle with Trooper Darcy when he initiated a stop of a motor vehicle containing an African-American male and the date of the stop.

## **ARGUMENT AND MEMORANDUM OF LAW**

    Evidence which is favorable to the accused and material to guilt or punishment must be produced by the government pursuant to *Brady v. Maryland.* 373 U.S. 83 (1963).

"Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature." *United States v. Prochilo,* 629 F.3d Case 2:19-cr-264, 268 (1st Cir. 2011); *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (in a case of alleged selective prosecution, in order to prevail on the merits the defendant must demonstrate that the action had a discriminatory effect and was motivated by a discriminatory purpose).

To prevail in this discovery request, a defendant is required to "articulate with some specificity" three reasons to grant the request. *Prochlo at 269*. First, Mr. Fagan must describe "what evidence he hopes to find in the requested materials." *Id.* Second, he must explain "why he thinks the materials contain this evidence." And finally, he must describe "why this evidence would be both favorable to him and material." *Id.*

In this Motion, undesigned counsel has identified several cases with the following similar facts: 1) no video of the driving infraction, 2) involving African-American males, and 3) stops based on questionable violations. This Court need not rely upon this representation, however, as we have Trooper Darcy's own words:

> John Darcy: "Yeah, he's wearing a wifebeater, he's got dreads. He looks like a thug. He may not be . . . and I'm not profiling him racially because I don't care that he's white or black. White kid, neck tats all over him, fucking sideways hat, thug. You know what I mean? So like . . . I get . . . I hate when people try to make it seem like that's what it is. I care about where people are from, and the way they seem . . . you know what I mean? Do they seem like they can be involved in drug dealing or gangs or something. I don't give a fuck if someone's black or white. Like . . . and I like saying this, like Nicole has a niece who is half-black. I'll tell someone, 'Dude, my fucking niece is half-black.' Like, don't play that racial shit with me."

This is clear evidence of Trooper Darcy's racial bias and animus. Other evidence might allow for the conclusion that Trooper Darcy engages in a statistically higher rate of traffic stops, searches, and summonses for minor offenses for drivers or passengers of color. See *United States v. Henderson*, 463 F.3d 27 *; 2006 U.S. App. LEXIS 22852 ("{t}he case then proceeded to trial. Kominsky was the first witness. After his direct examination, the government belatedly produced documents indicating that Kominsky had been the subject of complaints for subjecting drivers to baseless and harassing stops, along the same stretch of road where he stopped Alford and Henderson. Henderson asked that the trial be stayed and the motion to suppress reopened.")

Additionally, Mr. Fagan seeks to find a pattern of racist statements, actions, and attitudes expressed by Trooper Darcy and reflected in his disciplinary record. According to the Stanford University Open Policing Project, nationwide rates of stops and searches are higher for black and Hispanic motorists, suggesting racial bias in policing is widely pervasive and significant.[1]  Mr. Fagan reasonably suspects such evidence exists in the requested materials and that such materials will cast doubt on his veracity and credibility. "Factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story may be so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it. Where such factors are present, the court of appeals may well

---

[1] A large-scale analysis of racial disparities in police stops across the United States, *Pierson, E., et al.,* available at: https://5harad.com/papers/100M-stops.pdf (last visited June 25, 2020).

find clear error even in a finding purportedly based on a credibility determination." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

If the requested materials show a pattern of racial animus by Trooper Darcy, it is admissible and favorable to Mr. Fagan. *United States v. Pemberton*, 1:18-cr-00099-JAW-1("Mr. Pemberton who wishes to introduce the evidence of racial bias to undercut the credibility of the police officers who investigated the case. Assuming Mr. Pemberton presents a proper foundation, the Court would likely view such evidence, presented through cross-examination, to be admissible.")

Evidence of racial bias is material to Trooper Darcy's credibility and bias and informs this Court's evaluation of his testimony regarding Mr. Fagan's alleged unrecorded motor vehicle infraction. Such evidence is favorable to Mr. Fagan to the extent it impeaches Trooper Darcy's credibility regarding the validity of this traffic stop. If records of Trooper Darcy's efforts to enforce such infractions follow a racialized pattern, such evidence supports Mr. Fagan's claim that Trooper Darcy did not have an actual articulable suspicion of any wrongdoing, but rather stopped Mr. Fagan on the basis of his race alone, or, using his own words, because he "looks like a thug." Thus, materials requested herein likely contain "favorable, material evidence," in support of Mr. Fagan's Motion to Reopen Motion to Suppress filed contemporaneously with this Motion. *Prochilo*, 629 F.3d 264, 269.

WHEREFORE, for all the foregoing reasons, Mr. Fagan requests that this Honorable Court Order the United States produce the requested materials to the Defendant

or to the Court for an *in camera* review to assess their materiality and favorability to the Defendant.

Dated this 19th day of October, 2020 at Portland, Maine.

    Respectfully submitted,

    /s/ David J. Bobrow, Esq.
    Attorney for Damon Fagan
    BEDARD AND BOBROW, PC
    9 Bradstreet Lane
    P.O. Box 366
    Eliot, ME 03903
    207.439.4502
    djblaw@bedardbobrow.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 2:19-CR-00123-DBH |
| | ) | |
| DAMON FAGAN, | ) | |
|      Defendant | ) | |
| _____ | ) | |

**CERTIFICATE OF SERVICE**

I, David J. Bobrow, Esq., hereby certify that I have caused to be served via ECF this Motion for Discovery on the following individuals:

1. Nicholas Scott, Esq. at <Nicholas.Scott@usdoj.gov>;

2. All other attorneys of record in this matter.

Dated this 19th day of October, 2020 at Portland, Maine.

                                           Respectfully submitted,

                                           /s/ David J. Bobrow, Esq.
                                           Attorney for Damon Fagan
                                           BEDARD AND BOBROW, PC
                                           9 Bradstreet Lane
                                           P.O. Box 366
                                           Eliot, ME 03903
                                           207.439.4502
                                           djblaw@bedardbobrow.com