UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:19-cr-00123-DBH |
| | ) | |
| DAMON FAGAN | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY**

The United States of America, by and through its attorneys, Halsey B. Frank, United States Attorney for the District of Maine, and Nicholas Scott, Assistant United States Attorney, respectfully objects to Defendant's Motion for Discovery (ECF No. 119). The defendant has been charged by indictment with one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (ECF No. 24). For the following reasons, the government respectfully requests that the defendant's Motion for Discovery be denied.

**PROCEDURAL HISTORY**

On February 5, 2020, the Court held a hearing on defendant's Motion to Suppress dated November 5, 2019. (ECF No. 46). In his motion, defendant contended that there was no lawful basis for Maine State Police Trooper John Darcy to stop defendant's vehicle, and that as a result, heroin recovered from the defendant's person during the stop should be suppressed. Defendant also argued that troopers violated *Miranda*, that his consent to search was not voluntary, and that the search of his person was overly intrusive. At the suppression hearing, the government called two witnesses: Trooper John Darcy, and Trooper Jonathan Russell, and the defendant called no witnesses. At the conclusion of the suppression hearing, the Court issued an oral order denying the motion to suppress, finding that: (1) the traffic stop was lawful because a reasonable officer could conclude that there was probable cause for a traffic stop based on Trooper Darcy's

1

observations of an unsafe lane change; (2) even if the Court were to conclude that certain statements were elicited in violation of *Miranda*, physical evidence seized as a result of those statements was not excludable as fruit of the poisonous tree; (3) defendant's statements were not involuntary, and if defendant's consensual relinquishment of the heroin was the product of those statements, it was not suppressible; (4) the heroin would have been inevitably discovered because Troopers had probable cause to arrest defendant for violating bail conditions and driving with a suspended driver's license, and in any case, Troopers had an independent basis to search the defendant due to bail conditions permitting searches of the defendant's person. *See Transcript of Proceedings*, February, 6, 2020, ECF No. 71.

Defendant mischaracterizes the evidence at the suppression hearing in this case, asserting that the traffic infraction does not clearly appear on video, and asserting that Defendant's case is similar to other cases with "no video" of the traffic infraction. *Defendant's Motion For Discovery*, ECF No. 119, at 2-3, 6. To the contrary, at the hearing, the government introduced dash camera footage from Trooper Darcy's vehicle which showed the moment at which the traffic infraction occurred. The Court found that the video from Trooper Darcy's dash camera did not contradict his testimony regarding how the defendant's lane change was unsafe. *Transcript of Proceedings*, February, 6, 2020, ECF No. 71, at 4-5. Further, the Court found that to extent it could make any judgment from the perspective of the dash cam recording, the defendant's vehicle's return to the right lane was abrupt. *Id.* Defendant did not allege at the suppression hearing that he had been stopped due to his race, or that any racially motivated conduct had occurred.

On September 2, 2020, the government allowed former defense counsel to view a video/audio recording of a traffic stop conducted by Trooper John Darcy on August 15, 2019.[1] Subsequently, former counsel filed a Motion for Reconsideration of the Order on the Motion to Suppress (ECF 106).[2] Thereafter, defendant filed the instant Motion for Discovery, and filed a Supplemental Motion for Reconsideration of the Court's Order on Motion to Suppress, and Motion to Reopen the Hearing on the Motion to Suppress (ECF 118).

In the instant motion, defendant seeks an order that the following materials be produced to the defendant, or in the alternative, provided to the Court for *in camera* review:[3]

1. All communications between Trooper Darcy and dispatch from 9:00 P.M. January 6, 2019 until Midnight on January 6, 2019.[4]

2. A list of all electronic requests from Trooper Darcy related to information on vehicles operating on the interstate from 9:00 P.M. until Midnight on January 6, 2019.

3. All police reports, video and audio recordings for any vehicle stops on the Maine Turnpike conducted by Trooper John Darcy in the last three years, to include:

   a. The purported justification for the stop;
   b. The race of the driver and any or all passengers in the vehicle;
   c. Names of drivers and vehicle occupants;

---

[1] The video depicted a traffic stop by Trooper Darcy of the defendant in *United States v. Terrell Walker*, 19-220-JDL, a case charged in the District of Maine that was subsequently dismissed on September 23, 2020.

[2] Former counsel also filed a motion to withdraw as Attorney (ECF 107), which was granted on September 20, 2020. (ECF No. 112). Former counsel also represents Maine State Police Troopers in disciplinary hearings. Prior to the suppression hearing, defendant waived any potential or actual conflict of interest created by former counsel's representation of Maine State Police Troopers at a *Foster* hearing conducted on February 6, 2020 (ECF No. 63).

[3] After filing the instant motion, defendant provided the government with a written discovery request demanding the same materials requested in the motion.

[4] Prior to the suppression hearing, the government provided defendant with a written log of communications between Trooper Darcy and a law enforcement dispatcher, which concerned the stop of the defendant on January 6, 2019. This log also included details of information Trooper Darcy requested with respect to the defendant and his vehicle during the stop. The government opposes defendant's generalized request for all communications between Trooper Darcy and dispatch, as well as all requests regarding other vehicles travelling on the interstate. As opposed to materials specifically relating to the stop of the defendant, the requested materials would be irrelevant and beyond the scope of discovery.

3

   d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them;

   e. All records related to the frequency with which Trooper Darcy actually discovers contraband in stopped vehicles.

4. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors alleging that he conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of his law enforcement career, and any disciplinary actions taken against him on these bases.

5. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

6. All police reports, video and audio recordings for any vehicle stops on the Maine Turnpike conducted by all troopers of Troop G of the Maine State Police in the last three years, to include:

   a. The purported justification for the stop;

   b. The race of the driver and any or all passengers in the vehicle;

   c. Names of drivers and vehicle occupants;

   d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them;

   e. All records related to the frequency with which troopers actually discover contraband in stopped vehicles.

7. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or their peers and colleagues or prosecutors alleging that they conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of their law enforcement career, and any disciplinary actions taken against troopers on these bases.

8. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

9. The names of all other persons present in a vehicle with Trooper Darcy when he initiated a stop of a motor vehicle containing an African-American male and the date of the stop.

## ARGUMENT

## THE COURT SHOULD DENY DEFENDANT'S MOTION FOR DISCOVERY

Defendant's discovery requests can be divided into two categories of materials. The first category includes information which defendant contends might demonstrate a pattern of racial bias in police stops for violations of traffic laws (Items 1 through 3, 6, and 9, as indicated in the preceding paragraph.) As discussed below, defendant has not demonstrated that he is entitled to the materials on the basis of a claim of selective enforcement, or any other grounds.

The second category of requested materials concerns information regarding any complaints against Darcy based on accusations of racial bias, the use of racial slurs, etc. (Items 4 and 5, as indicated above).[5] At this time, the government is not aware of any such complaints. However, the government is aware of its ongoing obligations under *Brady* and *Giglio* and, will furnish any *Brady* and *Giglio* material at such a time as to permit its appropriate use by the defense.

### DISCOVERY ON A CLAIM OF SELECTIVE ENFORCEMENT ON THE BASIS OF RACE MAY NOT BE ORDERED ABSENT EVIDENCE THAT SIMILARLY SITUATED PERSONS OF A DIFFERENT RACE HAVE NOT BEEN STOPPED AND/OR ARRESTED

The defendant's motion for discovery should be denied. Defendant contends that records of Trooper Darcy's and other Troopers' stops would aid him in "showing a pattern of racial animus" which could be used to attack Trooper Darcy's credibility. Claiming that such materials would be favorable to him, the defendant argues that they must be produced pursuant to *Brady v. Maryland.* 373 U.S. 83 (1963). However "several courts have found that *Brady* does not compel

---

[5] Defendant also requests records regarding such complaints made against any other member of Trooper Darcy's unit, Troop G. Such materials, even if they exist, are not discoverable in this matter under Rule 16, *Brady*, *Giglio*, and the Jencks Act. Further, defendant has made no argument as to why he should be entitled to discovery of materials pertaining to troopers other than Darcy.

5

the disclosure of information in connection with a defendant's claim of selective enforcement. *See, e.g.*, *United States v. Washington*, 869 F.3d 193, 221 (3d Cir. 2017) (noting that certain information "relevant to a selective enforcement claim" is "not ordinarily . . . the sort of discovery material available to a criminal defendant under Fed. R. Crim. P. 16 or Brady and its progeny"); cf. *United States v. Safavian*, 233 F.R.D. 12, 20 (D.D.C. 2005) (denying discovery of selective prosecution evidence unless it was independently discoverable under Brady); *United States v. Blumberg*, No. CRIM. 00-10-B-S, 2000 WL 1511194, at *5 (D. Me. Oct. 5, 2000) (holding that selective prosecution evidence is not material under Brady); *United States v. Feliciano*, 998 F. Supp. 166, 174 (D. Conn. 1998) (denying request for evidence which was "framed as a request . . . under Brady" but which was "really for evidence of selective prosecution"); cf. also *United States v. Armstrong*, 517 U.S. 456 (1996) (concluding that evidence of selective prosecution is not "material" under what is now Fed. R. Crim. P. 16(a)(1)(E))." " *United States v. Anthony Jones*, Case 2:19-cr-201, ECF No. 47, Order on Motion for Discovery, at 8, Fn. 3.

Though defendant contends that the requested materials should be produced under *Brady*, what he really seeks is evidence of selective enforcement.[6] *See United States v. Feliciano*, 998 F. Supp. 166, 174 (D. Conn. 1998). As explained, *infra*, selective enforcement discovery claims are subject to the standards articulated by the Supreme Court in *United States v. Armstrong*, 517 U.S. 465 (1996) with regards to claims of selective prosecution. See *United States v. Alcaraz-Arellano,* 441 F.3d 1252 (10th Cir. 2006), *United States v. Barlow*, 310 F.3d 1007 (7th Cir. 2002). In *Armstrong,* the Supreme Court explained that to obtain discovery in support of a claim of selective prosecution based upon race, the defendant must show that other races could have

---

[6] Defendant's intent to pursue a selective enforcement claim is evident from his motion to reopen the suppression hearing. ECF 118, at 9-12.

been prosecuted but were not. *Id.* at 469. The defendant must make a credible showing with some evidence of different treatment of similarly situated persons. *Id.* at 470.  Here, the defendant cites three cases that he contends demonstrate racial bias by Trooper Darcy: *United States v. Gregory Martin,* Docket 2:18-cr-00124*, United States v. Terrell Walker*, Docket 19-220-JDL *United States v. Anthony Jones*, Docket 2:19-cr-201. These cases do not provide the evidence sufficient to meet the standard in *Armstrong* and as a result, the defendant's motion should be denied.

### A Defendant Seeking Discovery On A Claim of Selective Enforcement Must Make A Substantial Threshold Showing

Selective enforcement of motor vehicle laws on the basis of race is a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001); *see also Whren v. United States*, 517 U.S. 806, 813 (1996); *Flowers v. Fiore*, 359 F.3d 24, 34-35 (1st Cir. 2004). Although the First Circuit has not addressed the matter of selective enforcement as it pertains to discovery, several other Circuits have. In particular, both the Seventh and Tenth Circuits have applied the standards articulated by the Supreme Court in *Armstrong* to selective enforcement claims.

In *United States v. Alcaraz-Arellano,* 441 F.3d 1252 (10th Cir. 2006), which stemmed from a traffic stop, the defendant filed a motion to dismiss and for discovery based on a claim of selective enforcement, arguing that the officer's decision to stop him was based, at least in part, on his race. *Id.* at 1261.  Alcaraz-Arellano further requested, as the defendant has here, information regarding racial-profiling complaints against the officer, as well as records of the officer's vehicle stops. *Id.*  The Tenth Circuit applied the *Armstrong* standard and noted that in a selective prosecution case, two elements must be met: (1) the federal prosecutorial policy had a discriminatory effect, and (2) it was motivated by a discriminatory purpose.  *Id*. at 1263 (*citing*

7

*Armstrong*, 517 U.S. at 465). The court determined that similar standards should apply to selective enforcement claims and ruled "the standard for proving a selective-enforcement claim should be, as with selective prosecution claims, a demanding one." *Id.* Therefore, in order to obtain discovery the defendant had to present evidence "from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Id.* To prove discriminatory effect, an individual "must make a credible showing that a similarly-situated individual of another race could have been, but was not stopped or arrested…for the offense for which the defendant was stopped or arrested." *Id.* And to establish a discriminatory purpose, it must be demonstrated that discriminatory intent was a motivating factor in deciding to enforce the law against the defendant. *Id.* This could be proven by either direct or circumstantial evidence. *Id.*

In *United States v. Barlow*, 310 F.3d 1007 (7th Cir. 2002), the Seventh Circuit reached the same conclusion as the Tenth Circuit in *Alcaraz-Arellano,* in determining that the *Armstrong* standard applied in selective enforcement cases. *Id.* at 1010. To determine whether law enforcement's actions had a racially discriminatory effect, the court ruled, members of a protected racial group must illustrate they received less favorable treatment than nonmembers of the protected racial class. *Id.* Specifically, "an African-American claimant must demonstrate that a law or regulation was enforced against him, but not against a similarly-situated individual of other races." *Id.*[7]

---

[7] It should be noted in cases pertaining to the limited context of stash house reverse-sting operations, some Circuits have espoused a more relaxed standard for selective enforcement discovery than that articulated in *Armstrong*. *See, e.g., United States v. Washington,* 869 F.3d 193, 220 (3rd Cir. 2017) (finding that because the reverse-sting model is a defined operation with official policy implemented by an agency, claims of unconstitutional polices or practices lodged against it rather than an individual cannot be met with qualified immunity or good faith exception. Therefore, motions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong* framework.) *United States v. Davis*, 793 F.3d 712 (7th Cir. 2015)( adopted a more permissive standard for discovery in stash house reverse-sting operations and did not address nor overrule the finding in *Barlow.)United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018) (finding that request for

The standard in *Armstrong* should be applied to the instant matter, as the facts are akin to *Alcaraz-Arellano* and *Barlow*, and are not in line with that of a stash house reverse-sting operation. The dynamics inherent in the formulation and implementation of stash house reverse-sting operations are unique and not present in every day run-of-the-mill traffic stops. In cases outside the stash house reverse sting context, the required showing to justify discovery is more demanding, as evidenced by the decisions from the Seventh and Tenth Circuits. This case is no different and *Armstrong* should apply.

### The Showing To Obtain Discovery Must Include Evidence That Similarly Situated Persons Of Other Races Have Not Been Stopped And/Or Arrested

While the First Circuit has not directly addressed the issue of selective enforcement, it has addressed selective prosecution and the definition of "similarly situated" individuals in the context of selective prosecution.[8] "Although we have not previously provided a distinct definition of the term 'similarly situated' in the selective prosecution context, classic equal protection principles light our path and limn the attributes of one who is similarly situated." *United States v. Lewis*, 517 F.3d 20, 27(1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 465). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Lewis*, 517 F.3d at 27 (citing *Armstrong*, 517 U.S. at 469). A district court "should assess every material fact in rendering its judgment as to which offenders should be deemed

---

discovery on claims of selective enforcement in the stash house reverse-sting operations context are governed by a less rigorous standard than that applied to claims of selective prosecution under *Armstrong*.) *United States v. Hare*, 820 F.3d 93,102 (4th Cir. 2016) (finding that even with the reduced standard and evidence sufficient to warrant discovery into selective enforcement, the defendants did not demonstrate they were entitled to discovery beyond what the government had provided) The lower standard has not been employed in cases involving traffic stops.

[8] As discussed above, in selective enforcement cases other than stash house reverse sting operations, the standard in *Armstrong* appears to be the guidepost in other Circuits. Therefore, logically, the analysis set forth by the First Circuit for "similarly situated" individuals in selective prosecution cases should be the same for selective enforcement cases.

similarly situated." *Lewis*, 517 F.3d at 27; *see also United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (explaining that "defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them").

The defendant cites three cases in support of his motion, each involving Black male defendants. The first, *United States v. Gregory Martin, Docket 2:18-cr-00124*, pertains to Trooper Darcy's traffic stop of a white female driver and Martin, a Black male passenger. *United States v. Gregory Martin*, 2:18-cr-00124-JDL, Court's Order on Defendant's Motion to Suppress, ECF. No. 56.[9] During the stop, a narcotics canine provided a positive alert and Troopers found drugs in the vehicle, which Martin admitted belonged to him. *Id.* at 4. Martin, moved to suppress, alleging that the stop was unlawful, but did not allege that he had been stopped or treated unfairly due to his race. *United States v. Gregory Martin*, 2:18-cr-00124-JDL (ECF No. 78). Following a hearing, the court denied Martin's motion to suppress, finding that the stop was supported by reasonable suspicion that the driver was impaired based on Trooper Darcy's un-contradicted testimony that he observed the vehicle fluctuating in speed between 50 and 70 miles per hour, randomly applying the brakes for no reason, and weaving. *United States v. Gregory Martin*, 2:18-cr-00124-JDL, Court's Order on Defendant's Motion to Suppress, ECF. No. 56, at 6-7.[10]

Second, the defendant cites *United States v. Terrell Walker*, 19-220-JDL. In that case, Darcy was recorded speaking to another trooper on the vehicle dashboard camera. This

---

[9] The Order on Defendant Martin's Motion to Suppress does not indicate the race of the driver and defendant passenger. However, the government is aware that the driver is white, and Martin is Black.
[10] The court also found that the stop was not unjustifiably prolonged and that the search of Martin's vehicle was supported by probable cause arising from the canine alert. *Id.*

conversation occurred, prior to Walker's vehicle being stopped.  A transcript of the pertinent conversation is below:

> Trooper Darcy: Like if I see a white thug, I'm going to be interested, just like a Black thug, or a fuckin' Chinese thug. Like, I'm interested in thugs, that's not racial profiling. Like some Black guy goes by, and he's just some normal dude from Portland, like whatever. This guy kind of looks like a thug, to be honest with you.
>
> Other Trooper: You see the guy driving?
>
> Trooper Darcy: Yeah. He's wearing a wife-beater, he's got dreads, he looks like a thug, he may not be. And I'm not profiling him racially, because I don't care that he's white, Black.  White kid, neck tats all over him, fucking sideways hat, thug, you know what I mean. So like I get… I hate when people try to make it seem like that's what it is.  I care about where people are from, and the way they seem, do you know what I mean? Like, do they seem like they could be involved in the drug game, or gangs, you know what I mean? I don't give a fuck whether they are black or white, like… And I like saying this, Nicole has a niece who is half Black, I'll tell someone like, my niece is half-Black, don't play that racial shit with me.

Following this conversation, Darcy stopped the vehicle, a canine responded and Walker was found in possession of drugs and a loaded firearm.

Third, the defendant cites *United States v. Anthony Jones*, Case 2:19-cr-201, Order on Motion for Discovery, ECF No. 47. In that case, Jones asserted that he had been pulled over for driving a vehicle with an expired inspection sticker. *Id.* at 2. Jones moved for discovery regarding "[a]ll police reports and video for stops conducted on the Maine Turnpike by Trooper Darcy" since September 2016." *Id.* at 6.  Jones contended the case seemingly involved racial profiling because the defendant is Black and there was no reasonable suspicion justifying Trooper Darcy's actions.  *Id.* at 7.  The court denied the motion, finding that that Jones failed to

offer any support for his contention that Trooper Darcy's investigation was not supported by reasonable suspicion. *Id*. at 8.[11]

Defendant has failed to show any evidence of selective enforcement by Trooper Darcy. None of the cases defendant cites aid in making a credible showing of some evidence that a similarly-situated individual of *another* race could have been, but was not stopped or arrested in similar circumstances to the instant case. The defendant's motion is devoid of any other factual information. As a result, the defendant has failed to meet the burden established in *Armstrong* to show that other races could have been stopped and/or arrested but were not, and is not entitled to the discovery he seeks.

## CONCLUSION

The government respectfully requests that the Defendant's Motion for Discovery be denied.

Dated: November 16, 2020

                                  Halsey B. Frank
                                  United States Attorney

                                  /s/ Nicholas Scott
                                  Nicholas Scott
                                  Assistant United States Attorney
                                  U.S. Attorney's Office
                                  100 Middle Street Plaza, East Tower
                                  Portland, ME  04101
                                  (207) 780-3257
                                  Nicholas.Scott@usdoj.gov

---

[11] Jones has since filed a motion for reconsideration of the Court's Order on Defendant's Motion for Discovery, which has not yet been decided. *United States v. Anthony Jones*, Case 2:19-cr-201, ECF No. 49.

**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 16, 2020, I electronically filed the Government's Opposition to the Defendant's Motion for Reconsideration of Discovery with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record.

                                Halsey B. Frank
                                United States Attorney

                                /s/ Nicholas Scott
                                Nicholas Scott
                                Assistant United States Attorney
                                U.S. Attorney's Office
                                100 Middle Street Plaza, East Tower
                                Portland, ME  04101
                                (207) 780-3257

Nicholas.Scott@usdoj.gov

14