**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 2:19-CR-00123-DBH |
| DAMON FAGAN, Defendant | ) | |

**<u>MR. FAGAN'S RESPONSE TO GOVERNMENT'S OBJECTION TO MOTION FOR DISCOVERY</u>**
**(HEARING REQUESTED)**

NOW COMES the Defendant Damon Fagan, by and through his attorney, David J. Bobrow, Esq., and responds to the Government's Objection to the Motion for Discovery stating as cause as follows:

The Government's conclusory objection can be summed up by its statement that "defendant has not demonstrated that he is entitled to the materials on the basis of a claim of selective enforcement, or any other grounds." *ECF #125, page ID #434*. The Government's core argument is that the information requested by Mr. Fagan is not discoverable because it would only show the potential of selective enforcement. <u>See</u> *ECF # 125, page ID #434-35*("Brady does not compel the disclosure of information in connection with a defendant's claim of selective enforcement.") This argument ignores the specific basis for reopening the suppression hearing (for which the Government has

not objected-see *ECF #126*) based upon the existence of concrete evidence which casts doubt upon the veracity of the Government's only factual witness, Trooper Darcy. *ECF #120*. Courts have recognized that evidence would create a genuine factual dispute on an outcome determinative fact if it "significantly bolsters" a key witness' credibility "*or goes to whether [the officer] in fact had probable cause*," among other matters. *United States v. Mercadel*, 2003 WL 21766541, at *6 (emphasis added); *United States v. Atkins*, 1 F.3d 1247, 1993 WL 290157, at *2 (9th Cir.1993) (unpublished table decision) ("Because the new evidence in this case went to the heart of the magistrate judge's credibility determination underlying the denial of Atkins's suppression motion, the district court should have reopened to consider Weiss's credibility in light of the newly-discovered evidence'); see also *United States v. Henderson*, 463 F.3d 27 *; 2006 U.S. App. LEXIS 22852 (1st Cir. 2020). It is Mr. Fagan's contention that the requested additional information, solely within the Government's control, further diminishes Trooper Darcy's credibility. It is without dispute that Trooper Darcy has made statements that show his bias. Once bias has been shown, the Government is required to produce any exculpatory information that would color the testimony. *United States v. Shaygan*, 676 F.3d 1237, 1252(11th Cir. 2012)("The rules that govern our criminal justice system have developed over the life of our country to allow those accused of crimes to know the evidence against them; to be advised of the weaknesses in that evidence; and to be able to confront the witnesses against them with full knowledge of information which might color their testimony.")

The Government's argument that even if the Court concludes that Trooper Darcy harbors racial beliefs, those should not be considered in its analysis of credibility ignores every aspect of Constitutional protections for a defendant. Trooper Darcy is the sole Government witness. The basis for the stop of Mr. Fagan's vehicle was completely subjective premised upon his assessment that Mr. Fagan's vehicle was not 'safely clear' when returning to the travel lane. <u>See</u> *29-A M.R.S.A. §2070* (using verbiage 'until safely clear'). To the extent the Government argues that Trooper Darcy's subjective believes are irrelevant, this ignores every protection for a criminal defendant. The Government is essentially suggesting that it would have no obligation to provide materials to the Defendant even if it has information that the preconceived beliefs or actions by an entity in a criminal trial, might impact the ability of that person to be impartial. This is contrary to common sense due process.

Every entity involved in a criminal trial is held to a standard of impartiality in order to ensure that a defendant receives due process, starting with the trier of fact. A juror with any racial bias is presumed to have an inability to be impartial. *United States v. Parker*, 872 F.3d 1, 5(1st Cir. 2017)(the judge noted that " it can be difficult sometimes for people to talk openly about [race] or to be honest or open about whatever feelings they may have on [that] subject[], but your duties and obligations as citizens and as potential jurors require you to be completely honest with me." Having said that, the judge asked the group if anyone had " any feelings of any kind that may affect your ability in any way to be fair and impartial in the trial of an African-American defendant because of his race.")

One touchstone of a fair trial is an impartial trier of fact-"' a jury capable and willing to decide the case solely on the evidence before it.'"*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). When questions of juror bias are raised, the Supreme Court has long recognized that " it would not be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without ' violating the plainest principles of justice.' This might occur in the gravest and most important cases...." *McDonald v. Pless*, 238 U.S. 264, 268-69, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

The obvious difficulty with prejudice in a judicial context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require." *United States v. Heller*, 785 F.2d 1524, 1527 (11th Cir.1986) (reversing jury verdict based on a voir dire of deliberating jurors where the " religious prejudice displayed by the jurors ... is so shocking to the conscience and potentially so damaging to public confidence in the equity of our system of justice, that we must act decisively to correct any possible harmful effects on this appellant" ); see also *United States v. McClinton*, 135 F.3d 1178, 1185 (7th Cir.1998) ("The Fifth and Sixth Amendments protect a criminal defendant from a jury's lynch mob mentality through the guarantees of due process of law and trial by an impartial jury." )

Similarly, a judge with preconceived biases creates a substantial possibility that neutrality could be questioned. *In re Complaint of Judicial Misconduct*, 751 F.3d 611, 625 (Fed. Cir. 2014); see also https://www.washingtonpost.com/nation/2019/10/31/judge-

spoke-out-about-racial-bias-now-prosecutors-are-trying-get-her-removed-hundreds-cases/.

There is also a presumption that prosecutors and defense counsel with preconceived biases or discriminatory actions create a presumption against a fair process. See *Kesser v. Cambra*, 465 F.3d 351, 368 (9th Cir. 2006)(The prosecutor's remarks, however, do much to bolster Kesser's claim. They underscore the necessity of applying a comparative juror analysis in order to bring his purported justifications under greater scrutiny. We have previously found that "factors [that] may have been relevant in negating a 'pattern' of discrimination in the jury selection" are "not persuasive in the face of the prosecutor's statements expressly admitting a discriminatory motive." *United States v. Omoruyi*, 7 F.3d 880, 882 (9th Cir. 1993) (finding that where the government admitted to a strategy of striking unmarried women but not unmarried men, inclusion of six women on the panel did not prevent a finding of discrimination. “The stronger the objective evidence of discrimination, the more we will require by way of verifiable facts to sustain a trial court's finding upholding the exercise of challenges.”)(internal citations omitted); *McConico v. Alabama*, 919 F.2d 1543, 1548 (11th Cir. 1990)(in order to prevail on an ineffective-assistance-of-counsel claim based on a conflict of interest, a habeas petitioner must demonstrate that an “actual conflict of interest adversely affected his lawyer's performance.” To prove that the conflict "adversely affected" his representation, the "petitioner need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance.”)

The Government also diminishes the claims of Mr. Fagan by pointing to his citation of only three instances of questionable stops by Trooper Darcy. See *ECF #125, page ID #439, 440*. There is a cynical irony in being dismissive of Mr. Fagan's requests while simultaneously stonewalling them. As the Supreme Court has said, "[a] rule thus declaring 'prosecutor may hide, defendant must seek' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696, 124 S.Ct. 1256 (2004). But the cases where Trooper Darcy has made questionably subjective Terry Stops of minorities is hardly limited to three. See *State of Maine v. Damion Dunkley*, YRKCD-CR-19-508(Defendant stopped for driving too closely to vehicle in front); *State of Maine v. Edward Williams*, YRKCD-CR-2018-713(Defendant stopped for unsafe lane changes); *United States v. Thell Brown*, 2:19-cr-0207 (vehicle stopped for following another vehicle too closely); *United States v. Alexis Boyd*, 2:19-cr-0175(vehicle stopped for failure to maintain a lane); *United States v. Judith Ruiz*, 2:19-cr-00201(stop based on traveling in the middle lane without passing anyone). The defense can only imagine how many examples could be cited for questionable vehicle stops if the requested discovery is provided.

Finally, the Government states that "the Defendant mischaracterizes the evidence at the suppression hearing in this case, asserting that the traffic infraction does not clearly appear on video, and asserting that Defendant's case is similar to other cases with "no video" of the traffic infraction. To the contrary, at the hearing, the government introduced dash camera footage from Trooper Darcy's vehicle which showed the moment at which the traffic infraction occurred. The Court found that the video from Trooper Darcy's dash

camera did not contradict his testimony regarding how the defendant's lane change was unsafe. Further, the Court found that to extent it could make any judgment from the perspective of the dash cam recording, the defendant's vehicle's return to the right lane was abrupt." *ECF #130, page ID #430-431* (internal citations omitted). It logically follows that the Government is asserting that because this Court found that the video of the stop did not contradict {the officer's} testimony, the basis for the stop was legitimate, and thus, there would be no rationale to reopen a suppression hearing despite the existence of exculpatory evidence that could not be produced at the time of the suppression hearing.

To clarify, this Court did not find that the video produced separate evidence supporting the basis to pull over the defendant. Additionally, while this Court found that the return to the right lane was abrupt, it did not state that the lane change was unsafe. Rather, this Court found the officer's testimony credible enough to deny the suppression motion. *ECF #75.* What remains unknown is if this Court will continue to find Trooper Darcy credible based upon his statement that he 'stops thugs' and that he stopped a vehicle 'containing a thug' for allegedly failing to return to the right lane quick enough, that he stopped a vehicle 'containing a thug' for failing to maintain consistent speed, that he stopped a vehicle 'containing a thug' for following too closely, that he stopped a vehicle 'containing a thug' for traveling in the middle lane without passing anyone, that he stopped a vehicle 'containing a thug' for failing to maintain a lane, in addition to the stop in this matter. The basis for this Motion is to ascertain how many other stops of 'thugs' exist that are not independently supported by video evidence.

WHEREFORE, for all the foregoing reasons, Mr. Fagan requests that this Honorable Court Order the United States produce the requested materials to the Defendant or to the Court for an *in camera* review to assess their materiality and favorability to the Defendant.

Dated this 30th day of November 2020 at Portland, Maine.

Respectfully submitted,

/s/ David J. Bobrow, Esq.
Attorney for Damon Fagan
BEDARD AND BOBROW, PC
9 Bradstreet Lane
P.O. Box 366
Eliot, ME 03903
207.439.4502
djblaw@bedardbobrow.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 2:19-CR-00123-DBH |
| DAMON FAGAN, Defendant | ) | |

**CERTIFICATE OF SERVICE**

I, David J. Bobrow, Esq., hereby certify that I have caused to be served via ECF this Response to Objection on Motion for Discovery on the following individuals:

1. Nicholas Scott, Esq. at <Nicholas.Scott@usdoj.gov>;

2. All other attorneys of record in this matter.

Dated this 30th day of November 2020 at Portland, Maine.

Respectfully submitted,

/s/ David J. Bobrow, Esq.
Attorney for Damon Fagan
BEDARD AND BOBROW, PC
9 Bradstreet Lane
P.O. Box 366
Eliot, ME 03903
207.439.4502
djblaw@bedardbobrow.com